**Barbara J. WEBER, plaintiff, Appellant,**

v.

**Alan M. ALBRECHT, Albrecht & Albrecht Co., Joel Soderholm, Larry Lindberg and Patricia Lindberg, D. & J. Lumber, Inc., County of Hennepin, Adrion A. Foss, Respondents.**

**Alfred Leith, et al., Defendants,**

**Jack S. Jaycox Law Offices, Farmers State Bank of Hamel, Quentin P. Weber, etc., Respondents.**

No. CX–88–1853.

Court of Appeals of Minnesota.

March 14, 1989.

James B. Dickinson, Law Offices of James B. Dickinson, Wayzata, for Barbara J. Weber.

William F. Kelly, Kelly Law Offices, Excelsior, for Alan M. Albrecht, Albrecht & Albrecht Co.

Richard H. Speeter, Minneapolis, for Joel Soderholm.

William G. Swanson, Brooklyn Park, for Larry Lindberg and Patricia Lindberg.

Sidney L. Brennan, Jr., Minnetonka, for D. & J. Lumber, Inc.

Thomas L. Johnson, Hennepin County Atty., Minneapolis, for County of Hennepin.

John A. Meiners, Delano, for Adrion A. Foss.

Jack S. Jaycox, Bloomington, for Jack S. Jaycox Law Offices.

James Tiller, Hamel, for Farmers State Bank of Hamel.

Quentin P. Weber, etc., Scottsdale, Ariz., pro se.

Heard, considered and decided by NORTON, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This appeal is from a trial court judgment establishing the validity and priority of four mortgages held by respondent Alan Albrecht. The trial court ruled that all of Albrecht's mortgages are valid and are superior to appellant Barbara Weber's unpaid child support arrears. The trial court also authorized the now pending mortgage foreclosure proceeding by respondent and re-

fused to enjoin it. We affirm in part and reverse in part.

## FACTS

This appeal involves a dispute between appellant and her former husband Quentin Weber's attorney, respondent. The Webers married in 1968 and in 1976 appellant obtained title to a farmstead. She was the sole grantee and fee owner of that property. Quentin Weber possessed only an undetermined, inchoate marital interest in it. In 1981, the farmstead was sold to a third party under a contract for deed which provided for tri-monthly payments until 1991 when the entire unpaid balance on the contract would be due.

In 1982, appellant initiated marriage dissolution proceedings. At all times relevant during the proceedings, Quentin Weber was represented by respondent. As compensation for respondent's legal services, Quentin Weber executed two $4,000 promissory notes in favor of respondent, one in January 1982 and another in March 1982. Quentin Weber then assigned mortgages to respondent in the farmstead property as security for each note. The dissolution stipulation was entered into the record on April 20, 1982. Respondent filed his two mortgages nine days later on April 29, 1982.

The Webers' decree of dissolution was dated July 6, 1982, and provided that:

4(e) The payment of child support takes priority over payments of debts and other obligations.

\* \* \* \* \* \*

10. [A]ll the proceeds of said Contract for Deed [to the farmstead property] shall be divided with 65% going to [appellant] and 35% going to [Quentin Weber].

\* \* \* \* \* \*

That [Quentin Weber] shall execute an assignment of payments to [appellant] \* \* \*. The terms of said assignment shall be that the monthly payments shall be assigned to [appellant] and disbursed by her as follows:

(1) Any and all past due mortgage payments \* \* \*,

(2) Said payment shall then be divided with 65% going to [appellant],

(3) The remaining 35% shall then be applied to pay any arrearages in support required to be paid hereunder which is due and owing at the date of payment, if any,

(4) The remaining 35%, or the balance after paragraph 10(3) is satisfied shall then be paid to [Quentin Weber] forthwith.

\* \* \* \* \* \*

That the [appellant] shall be entitled to retain the portion otherwise payable to [Quentin Weber] under the foregoing paragraph in the event the judgments for arrearages in child support hereinbefore granted are not satisfied in full and/or [Quentin Weber] is in arrears in child support payments accruing after the date of the Judgment and Decree herein. \* \* \*

That at such time as the Contract for Deed is paid in full \* \* \* the remaining balance of the proceeds, if any, shall be split between the parties with the [appellant] receiving 65 percent of said proceeds and [Quentin Weber] receiving 35 percent of said proceeds. That [appellant] shall be entitled to set off from the portion of the proceeds otherwise payable to [Quentin Weber] pursuant to the foregoing paragraph any amount of arrearages in support required to be paid hereunder existing at the time of the payment of the Contract, whether reduced to judgment or not. \* \* \*

That in the event of cancellation of the Contract for Deed and the reversion to the parties of the property covered by the Contract for Deed, then in that event, the parties shall hold the property as tenants in common, the [appellant] having 65 percent ownership and [Quentin Weber] having 35 percent ownership.

11. That any and all sums coming into the possession of [appellant], which by virtue of any provision of this Judgment and Decree are payable to [Quentin Weber], shall not be anticipated, alienated or in any other manner assigned or transferred by [Quentin Weber] and such

funds shall be free from anticipation, execution, assignment, pledge, attachment, or other legal or equitable process which may be instituted by or on behalf of any creditor or assignee of [Quentin Weber] except as is expressly provided to the contrary in this Judgment and Decree.

Subsequent to the dissolution, Quentin Weber assigned two additional mortgages to respondent on the same farmstead property. These later mortgages were also to serve as security for promissory notes executed as payment for attorney services. They were filed on July 20, 1982 and May 3, 1983. Appellant alleges that she had no knowledge or notice of any of respondent's mortgages.

The contract for deed was cancelled and the property reverted to the Webers, triggering the decree provision which vested the parties' 65% and 35% ownership interest as tenants in common. Respondent subsequently initiated foreclosure proceedings to recover the amounts owed him under the unpaid promissory notes.

On March 22, 1988, appellant brought an action in district court seeking to enjoin the foreclosure proceedings and have respondent's mortgages declared invalid, or at least subordinate to her unpaid judgments for child support. The sheriff's foreclosure sale on respondent's first mortgage took place on May 3, 1988. The sheriff's certificate of sale was filed with the county on the same day. Pursuant to statute, the period available to redeem the property will expire on or about May 3, 1989.

Appellant's request to enjoin the foreclosure process was denied by the trial court, which also determined that respondent's mortgages were valid, were subordinate to appellant's 65% interest, and were limited to the 35% share of the property attributable to Quentin Weber. In the memorandum accompanying its order, the trial court stated:

As to whether [respondent's] mortgages are subordinate to Barbara Weber's total judgments for child support payments, by operation of paragraphs 11 and 4(e) of the divorce decree, in all cases where the payment of debts is made with "sums coming into the possession of" [appellant] which are then payable to Quentin Weber, the payment of child support "takes priority over the payment of debts and other obligations." * * * In a foreclosure sale, however, funds satisfying [respondent's] mortgages would not constitute "sums coming into the possession" of [appellant] * * *. Proceeds in satisfaction of the mortgages would flow directly from the sale to [respondent]. * * * [The] divorce decree does not operate to subordinate [respondent's] mortgages, in the context of foreclosure, to the prioritized child support payments.

## ISSUES

1. Did the sheriff's foreclosure sale moot appellant's claims in this appeal?

2. To what extent, if any, are respondent's mortgages valid?

3. Are any valid mortgages of respondent subordinate to appellant's claims for unpaid child support?

## ANALYSIS

1. *Mootness.*

Respondent asserts that the claims propounded by appellant are moot since the sheriff has already executed a foreclosure sale upon one of respondent's mortgages. We disagree.

It is well established that courts will hear only live controversies and will not examine the merits of a particular question merely for the purpose of setting precedent. *In re Inspection of Minnesota Auto Specialties, Inc.,* 346 N.W.2d 657, 658 (Minn.1984). If an event occurs which makes a decision on the merits unnecessary or an award of effective relief impossible, the case will be dismissed as moot. *Id.* Nonetheless, controversies which, if resolved, would create collateral legal consequences for the parties are not doomed to end ignominiously in the limbo of mootness. *Elzie v. Commissioner of Public Safety,* 298 N.W.2d 29, 32 (Minn.1980).

The fact that the sheriff's sale has already occurred does not preclude this

court from determining the validity and priority of respondent's mortgages. *See, e.g., Hohag v. Northland Pine Co.,* 147 Minn. 38, 179 N.W. 485 (1920) (court determined priority of claimant's lien after foreclosure sale of underlying property). Appellant would gain actual relief if she should succeed in having respondent's mortgages invalidated or subordinated to her claim for unpaid child support. Moreover, the period allowable for appellant, as creditor, to redeem has not yet expired, thus providing further indication that the sheriff's sale has not mooted this controversy. If the mortgages are invalid or subordinate to appellant's claim for unpaid child support, then no act of redemption is necessary. The issues of the mortgages' validity and priority thus remain live, uncertain and affecting future rights and interests.

■ 2. In addressing the merits of appellant's arguments, we note initially that the fact that Quentin Weber possessed only an inchoate, future interest in the property at the time he assigned the first two mortgages to respondent does not serve to invalidate those mortgages. A mortgage may properly attach to subsequently acquired interests in property. *Carlen v. Klammer,* 388 N.W.2d 792, 794 n. 3 (Minn. Ct.App.1986) (citing *Lowe v. Reierson,* 201 Minn. 280, 287, 276 N.W. 224, 227 (1937)). We agree with the trial court's determination that the first two mortgages were valid.

■ Furthermore, the mortgages assigned to respondent after the marriage dissolution are not rendered invalid by the language of the decree. Paragraph 11 of the decree prohibited Quentin Weber from encumbering "all sums coming into the possession of [appellant], which by virtue of any provision of this Judgment and Decree are payable to [Quentin Weber]." Paragraph 10 contains the only provision in the decree to which this language refers, and contemplates that the contract for deed payments will come into appellant's possession.

Under the decree's distribution formula, Quentin Weber was entitled to 35% of the payments, minus unpaid child support arrearages. We conclude, therefore, that Quentin Weber's 35% share of the proceeds from the contract for deed was the sole interest which he was prohibited from encumbering under paragraph 11.

Quentin Weber did not violate the provisions of paragraph 11 by mortgaging his interest in the farmstead property because respondent's mortgages could not attach to that property until Quentin Weber acquired an interest in it exceeding his original inchoate marital interest. *See Carlen.* We agree with the trial court's determination that the last two mortgages were valid.

■ 3. We cannot end our inquiry with a determination that respondent's mortgages validly attached to Quentin Weber's interest in the farmstead property. Appellant argues that even if those mortgages are valid, the trial court erred in determining that they took priority over appellant's unpaid child support. The trial court reasoned that sums paid pursuant to mortgage foreclosure were not "sums coming into the possession of [appellant]" within the terms of paragraph 11, and that those sums, therefore, would flow directly to respondent. We believe that the trial court's determination of priorities resulted from an unduly technical reading of the decree, and was contrary to the equitable intent of that instrument.

Paragraph 4(e) of the decree notifies both parties that "[t]he payment of child support takes priority over payment of debts and other obligations." Paragraph 10 of the decree states that Quentin Weber's 35% share of the regular contract for deed payments shall "be applied to pay any arrearages in support required to be paid hereunder which is due and owing at the date of payment, if any." Paragraph 10 also states that appellant shall be entitled to set off from Quentin Weber's 35% share from the balloon payment on the contract for deed "any amount of arrearages in support required to be paid hereunder existing at the time of the contract, whether reduced to judgment or not."

Reading the decree in its entirety, its clear intent was to ensure that the children's right to receive child support was protected to the fullest extent possible.

Therefore, we conclude that the parties intended that any sums payable to Quentin Weber by reason of the interest he acquired at dissolution of the marriage in the farmstead property previously titled in appellant's name alone, would be and would remain available to discharge child support arrears. The cancellation of the contract for deed cannot be deemed to have altered the clearly stated intention of the parties and permit the mortgage interests of Quentin Weber's attorney to gain superiority over the rights and interests of the minor children. Respondent's mortgages are subordinate to appellant's claims for child support.

## DECISION

The sheriff's foreclosure sale did not render appellant's claims in this appeal moot. Respondent's mortgages, while valid, are subordinate to appellant's claims against Quentin Weber for unpaid child support.

AFFIRMED IN PART AND REVERSED IN PART.