### FARMERS STATE BANK OF EYOTA v. CLYDE H. CUNNINGHAM AND OTHERS.[1]

January 9, 1931.

No. 28,096.

[1]Reported in 234 N. W. 320.

*Fraser & Fraser,* for appellants.

*Christensen & Ronken,* for respondent.

WILSON, C. J.

Appellants have appealed from an alternative motion for judgment non obstante or a new trial.

One Lufkin owned 80 acres of land. Ernest W. Cunningham owned three 80s adjoining it. Mr. Cunningham had the usual farm buildings on his farm, there being none on the Lufkin 80. On June 30, 1922, Lufkin and his wife sold to Mr. Cunningham their 80 on contract for deed, which was duly recorded November 19, 1927. On October 15, 1926, plaintiff duly docketed a judgment against Mr. Cunningham for $2,122.69, and pursuant to an execution the sheriff levied upon all the right, title, and interest of Mr. Cunningham in the Lufkin 80 and sold the same to plaintiff on execution sale January 9, 1928, for $2,307.80. There was no redemption.

Apparently Lufkin made his first contract of this character to Mr. Cunningham on March 30, 1916. On the same day Mr. Cunningham gave a contract for deed to his three sons, the appellants herein. The father and Lufkin renewed their contract by making another one on December 21, 1920. On the same day a renewal contract was made between the father and his three sons. The contract between Lufkin and the father was again renewed by the contract of June 30, 1922, first above mentioned. On the same day the father again renewed his contract with his sons, who on January 4, 1929, duly recorded their contract.

Plaintiff prosecutes this action for ejectment against the appellants and their father. The latter did not answer.

■  Whether the appellants informed plaintiff of their rights under their contract with the father was disputed. The jury found that the plaintiff had not been so informed.

The further claim is made that appellants alleged possession was notice of their rights. As a general rule possession of real estate is constructive notice of the title of the possessor. Such notice is the same in effect as the notice which is imputed by the recording acts. Possession is not only prima facie evidence of title but is also notice of whatever rights the possessor has which would be disclosed upon reasonable inquiry. This is a branch of the doctrine of constructive notice. Such possession, in order to be sufficient to constitute notice, must be an actual, open, visible, and exclusive possession inconsistent with the title of the apparent owner by the record. The possession must be clear, unequivocal, and unambiguous. It is insufficient if equivocal, temporary, or occasional. It must be of a character which would put a prudent person upon inquiry; it must be such as to incite inquiry; it must indicate that someone other than he who appears by the record to be the owner has rights in the premises. The sufficiency of the facts depends upon a variety of circumstances. The extent and character of the property and the uses to which it may be put are obviously matters of considerable importance in determining whether or not the occupancy of it is sufficient to put a purchaser upon inquiry. Whether the par-

ticular person or someone else is in possession of the property is of course of vital importance.

■ In the instant case Lufkin held title. The father held a contract for deed from Lufkin. Plaintiff knew this and had a copy of the contract in its possession. Plaintiff did not know of any contractual relation between the father and the sons. The father was the head of the family. Appellants were members of that family, and two of them were minors when the father bought the land. After making the contract the land was fenced, 10 acres thereof was put under cultivation, the balance was pasture and timber. This 80 was worked in connection with the father's farm. The father owned all the machinery used. He owned six work horses. One of the sons owned two work horses. The other two sons and the mother owned the hogs on the farm. The father owned most of the cows up to 1927, but the sons owned some. The sons worked in the field and did the usual farm work, the father working mostly about the barn. The sons had an undivided interest in the young stock. It was apparently a family affair. All the livestock was kept on the father's home place. It was pastured together on both places, fed from produce of both places, and housed together in the father's barns. It would seem that the father had not abdicated as the head of the family. The situation carried very little evidence that the sons had replaced the father in possession. So far as an outsider could see, the possession of the 80 was no different from the possession of the father's farm.

The question of possession was for the jury, the charge was free from prejudicial error, and the jury found that the sons were not in such possession as to constitute notice to the bank that their presence was a possession indicating a claim inconsistent with the title with which it was dealing. Its transaction with the title was protected by the recording act, which barred such interests as the sons had acquired from their father. The claim that the levy upon all the "right, title, and interest" of the father reached nothing because he had no "right, title, and interest" is to ignore the recording act, which is effectual in such cases. The evidence is sufficient to support the verdict.

■ One of the grounds for a new trial was newly discovered evidence, but this related to matters which two of the appellants claimed recurred to their minds after the trial and pertained to conversations had by them a long while ago with officers of the plaintiff but which they did not think of at the time of the trial. The affidavits would indicate a lapse of memory on the part of these two appellants and that they now remember what they should have remembered at the trial. The trial court rightly rejected the request for a new trial on this ground.

■ The answer admitted paragraph 4 of the complaint, which pleaded the recovery and docketing of the plaintiff's judgment against the father. Not satisfied with the unqualified admission, plaintiff offered in evidence the judgment roll as exhibit 4, and the note upon which the suit was brought as exhibit 3. Defendants' counsel directed the court's attention to the admission and stated his grounds of objection, which alleged that the evidence was incompetent, irrelevant, immaterial, and self-sustaining. Further objection was made that the note contained statements and writings on it which were in no way binding upon the appellants. The language so pointed out to the court, typewritten on the note, which was a printed form, was this:

"I hereby assign as collateral security to this note my equity and rights in a certain contract for deed dated June 30-1922 and executed by John W. Lufkin and Nettie Lufkin his wife to Ernest W. Cunningham said premises described and situated in the Co. of Olmsted, State of Minnesota as follows: The S½ of SW¼ of Sec. 27-107-12."

The court overruled the objection and received the exhibit. Plaintiff now answers the charge of error by saying that if so it was without prejudice because later in the trial the father denied that the above language was on the note when he signed it and, having denied ever making any assignment at any time, exhibit 6, a promissory note given by him to Underwood Lumber Company, was offered and received in evidence. This note was also on a printed form and had the following typewritten interlineation thereon, to-wit:

"I hereby assign as collateral security to this note my equity subject to a prior assignment to Farmers State Bank of Eyota, Minn. in the sum of $1,400.00 and rights in a certain contract for deed dated June 30-1922 and executed by John W. Lufkin and Nettie Lufkin his wife to Ernest W. Cunningham said premises described and situated in the Co. of Olmsted and State of Minnesota as follows: The S½ of the NW¼ of Sec. 27-107-12."

Plaintiff's suggestion is hardly sufficient. Had exhibit 3 not been unnecessarily put in evidence the father might not have been a witness. Nor can we assume that in substance such assignment would ever have been disclosed to the jury through the contents of exhibit 6. If the reception of exhibit 3 was erroneous we have no way of telling the extent of its influence upon the minds of the jurors. Was the useless reception of exhibit 3 error?

The character of the possession and the claim of the respective parties thereto makes the acts of the father or sons important. The fact that the father made such assignment tends to characterize the father's possession as well as plaintiff's good faith. It was merely one of the several acts of one of the parties with whom possession rested. It was original evidence. The fact that it is not made to appear that the sons knew of the assignment is not important. It disclosed an act on the part of the father which was inconsistent with appellants' claim of possession. The effect of the contract from the father to the sons was substantially to assign to them his Lufkin contract, and hence he was not in a position to assign anything to the bank as he in fact apparently assumed to do. But the bank, knowing of the father's contract with Lufkin, was dealing with one holding under the record owner and with one who apparently assumed to be in possession.

Affirmed.