## J. W. LOWE v. SAMUEL REIERSON AND ANOTHER. ROSA NESS AND OTHERS, INTERVENERS.[1]

November 19, 1937.

No. 31,418.

[1]Reported in 276 N. W. 224.

G. H. Smith and V. J. Hermel, for appellant.
H. O. Chommie, for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order denying his motion for new trial. His suit was brought under the declaratory judgments act to determine his and defendants' relative rights to certain real estate in Marshall county, claimed adversely by plaintiff as against defendant Samuel Reierson. The other defendant as administrator was also alleged to claim an interest. The controversy arose by reason of execution sales theretofore had to enforce the collection of judgments against one R. Reierson.

The facts are not in issue and may be summarized thus: Samuel Reierson was the owner of a judgment, duly docketed in the district court of Marshall county on April 21, 1924, against said R. Reierson. Plaintiff was the owner of another judgment against the same defendant which was docketed in the same office on August 1, 1927. On August 1, 1929, the judgment debtor inherited some real estate

from his wife, who died intestate on that date. Probate proceedings are pending respecting that estate, but the administrator is not an interested party on this appeal, as the court made adequate provision for the protection of the administrator's rights in the premises, including as well recognition of the jurisdiction of..the probate court to there administer the property. Nor are interveners interested here, so the issue is squarely between plaintiff and defendant Samuel Reierson, and hereafter we shall refer to him as defendant.

Plaintiff caused an execution to issue upon his judgment, and pursuant to the same the judgment debtor's interest in the property was bid in at execution sale on June 6, 1931, for the full amount of the judgment with costs of sale. There was no redemption. Defendant later proceeded with execution sale resulting on April 14, 1934, in the issuance of a sheriff's certificate. The important thing is that the holder of the junior judgment attempted its collection, by levy and sale, before the holder of the senior judgment proceeded in similar fashion. There was no redemption made from that sale either. The validity of the respective judgments and the regularity of proceedings had with respect to their enforcement are not challenged. The court found the facts as outlined above and as conclusions of law determined that, as between the two contending claims, defendant was the owner of the property, subject to the jurisdiction of the probate court to administer it, inasmuch as the time for redemption had expired as to both sales. The court's reasons for so holding are stated in its memorandum thus:

"Under the common law the docketing of a judgment did not establish a lien upon the real property of the judgment debtor. The lien of a judgment is a creature of the statute. It would therefore seem to follow that the priority between judgments and the order of their enforcement are decided by the language of the statute.

"The statute provides that judgment liens shall attach 'upon all real property * * * then or thereafter owned * * * from the time of such docketing.' The statute places both classes of property in the same position.

"The order of enforcement of payment is likewise provided by statute, with the right of redemption by subsequent lienholders. The statute makes no other provision for determining priority."

Plaintiff's several assignments of error are necessarily limited to the single question: Do the findings justify the conclusions of law?

Plaintiff's claims are these: (1) That the two judgments were of equal standing as to the property here involved and that "neither gained any preference by reason of the date of their docketing"; (2) that, while the judgments were equal as liens, nevertheless, plaintiff being the more diligent creditor by reason of having the first execution issued and sale had thereunder, "from which no redemption was made," thereby "became the owner of the property, and that Samuel Reierson has no interest therein or lien thereon."

■ The answer to the determinative question here presented is to be found in 2 Mason Minn. St. 1927, § 9400, which reads:

"Every judgment requiring the payment of money shall be docketed by the clerk upon the entry thereof, and, upon a transcript of such docket being filed with the clerk in any other county, such clerk shall also docket the same. *From the time of such docketing the judgment shall be a lien, to the amount unpaid thereon, upon all real property in the county then or thereafter owned by the judgment debtor.*"

The italicized portion is that which gives rise to the present controversy. For plaintiff it is urged that the lien created by the judgment can be no greater in amount or extent than the interest or ownership of the judgment debtor, hence that where there is no property belonging to him at the time of docketing the judgment there can be no lien; in other words, "that where there is no title or estate, there is nothing to which the lien of the judgment can attach—no tangible subject for the action of the lien." Steele v. Taylor, 1 Minn. 210, 216 (274). We think there can be no disagreement with that contention. But that does not solve the problem confronting us. Rather the question is: What was the legislative intent in providing that the lien should attach upon docketing of judgment "upon all real property in the county *then or there-*

*after owned* by the judgment debtor?" As to real estate "then owned" by the debtor, there is no difficulty. Obviously, as to such the liens of the respective judgments would attach as of the date of docketing. That is the statutory language, and as such there is no room for construction. As to real estate "thereafter owned," it may be proper to note that the same result is sought if we accept the legislative language at its face value. The statute draws no line of distinction between the two. Granting, as we must, that there can be no lien without property upon which it may attach, our next problem is whether the legislature intended that after-acquired property should be similarly treated as was property "then owned" by the judgment debtor when the judgment was entered. In other words, which does the statute make determinative in such a case, the order of docketing or the time at which the liens attach in fact?

The statutory purpose is, obviously, to provide the means whereby the judgment creditor may compel the judgment debtor to pay his debt; hence the creation of the statutory lien for his benefit. The right to proceed against the debtor accrues immediately upon entry and docketing of judgment. That is when legal authority comes into existence to compel the debtor to meet the obligation created by the judgment. That future acquisitions of real property on the debtor's part can thus be subjected to judgment liability cannot be doubted. The statute specifically so provides.

■ Under our recording act, a docketed judgment is placed upon the same footing as a recorded conveyance. Section 8226 provides that unrecorded conveyances of land shall be void "as against any attachment levied thereon, or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance." Accordingly it has been held in many cases that a "judgment takes precedence over an unrecorded conveyance if the party obtaining it was without notice of the conveyance; otherwise, if he had notice, actual or constructive." 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8307, and cases under notes 10 and 11. So, too, it has been held that a judgment creditor's rights are superior to the equitable rights of a grantee to have his deed reformed so

as to include the particular real estate involved in that litigation. Wilcox v. Leominster Nat. Bank, 43 Minn. 541, 542, 45 N. W. 1136, 19 A. S. R. 259. The court said:

"The purpose of the statute is to protect purchasers, and attachment and judgment creditors, against claims to the real estate of which they have no notice by the record or otherwise. This would be as effectually defeated by allowing a mere equity, of which the judgment creditor has no notice, to displace the lien of his judgment, as by allowing a legal unrecorded title to have that effect. The record, as it stood when the judgment was docketed, contained no notice of any right in plaintiff, legal or equitable, except to the land described in her deed."

Under our statute relating to redemption from mortgage foreclosure sales, § 9627, this court has held repeatedly that priority of liens for purposes of redemption is determined by the time of record, without reference to the nature of the estates in the land owned by the mortgagor. 4 Dunnell, Minn. Dig. (2 ed.) §§ 6415 6416, and cases under notes 7 and 8. Of particular value here is Pamperin v. Scanlan, 28 Minn. 345, 348, 349, 9 N. W. 868, where Mr. Justice Mitchell lucidly covers the field with respect to redemptions and the order in which lien creditors may assert their rights as redemptioners. By § 9441 substantially the same methods are employed to make redemptions from sales on execution issued upon a judgment. That subject is well covered in 3 Dunnell, Minn. Dig. (2 ed.) §§ 3540 and 3541c, inclusive, and cases cited in notes.

This court has held in numerous cases that "successive judgment liens take effect in the order of the docketing and a junior judgment creditor cannot secure a preference merely by virtue of superior diligence in taking steps to enforce his lien." *Id.*, § 5070, and cases under note 61. Thus in Jackson v. Holbrook, 36 Minn. 494, 497-498, 32 N. W. 852, 1 A. S. R. 683, the court said:

"Under the statutes of this state, the holder of a junior judgment lien acquires no preference over a senior judgment lien upon the same real estate, by virtue of prior proceedings to execute his judgment; and, as to all persons claiming under a judgment debtor

subsequent to the lien of the senior judgment creditor, the rights of the latter are superior, and cannot be divested by any proceedings of a junior lienholder, claiming under the same debtor, to which the senior creditor is not a party. The whole policy of the statutes, in respect to the preferences of prior judgment liens against real estate, would be subverted, if a junior judgment creditor could acquire a preference merely by virtue of superior diligence in taking proceedings to enforce his lien; nor do we understand that the law recognizes any different rule, as between judgment creditors, where the judgment debtor has made prior fraudulent conveyances which are void alike as respects both. The judgments in such cases are liens at law, and, as to real estate, necessarily take precedence according to the date of the record."

That opinion, sustained by many later decisions, effectively disposes of plaintiff's claim to priority by virtue of his alleged diligence. See also Hulbert v. Hulbert, 216 N. Y. 430, 111 N. E. 70, L. R. A. 1916D, 661, Ann. Cas. 1917D, 180, and Zink v. James River Nat. Bank, 58 N. D. 1, 224 N. W. 901, 67 A. L. R. 1294.

■ If plaintiff and defendant were the holders of mortgages given by the judgment debtor and filed for record in the order in which the judgments here were entered, there can be no doubt that priority would be determined by recording dates, absent notice otherwise. And that is the general rule.

"A mortgage of real property to be thereafter acquired takes effect as a valid lien immediately when the property is acquired by the mortgagor, and as between successive mortgages of after acquired property, priority of lien is determined by priority of time of the execution of the mortgages." 19 R. C. L. p. 409, § 188.

It is true that the lien afforded by judgment exists only by virtue of statute and not by reason of any agreement between the judgment creditor and his debtor. That there is a distinction between the two seems clear. Where a right is created by contract the holder of such right deals with specific things and as such obtains an equitable interest in that thing—"an interest which is property, or analogous to property"—whereas the judgment creditor

is not *dealing* with his debtor in any such way and in most cases not at all. 2 Pomeroy, Equity Jurisprudence (4 ed.) § 685. Where, however, as in this state, the judgment creditor stands in the position of a purchaser for value, the situation is such as to make differentiation of this type of rather doubtful worth. Clearly, if debtor's interests in real property were in existence at time of entry of judgment there could be no doubt about priority going with date of docket entry. Our duty is to read, consider, and interpret (if there be doubt as to meaning) the entire section (9400) as a whole. So reading and considering it, we cannot escape the conclusion that the legislative intent was to place all judgment creditors in the same relative positions to each other no matter when or by what means the debtor acquired his property, just so it was acquired within the lifetime of their judgments. The statute makes no distinction; neither should we.

The language of this statute is as clear and unambiguous as chosen words can be employed to that end. As to all judgments for the payment of money, from the time of docketing, a lien is given upon all real property in the county "then or thereafter owned by the judgment debtor."

" 'A statute is to be enforced literally as it reads, if its language embodies a definite meaning which involves no absurdity or contradiction. In such a case the statute is its own best expositor.' 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8938, and cases cited under notes 2 and 3." Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812, 813.

There are many cases bearing upon this subject annotated in Zink v. James River Nat. Bank, 58 N. D. 1, 224 N. W. 901, 67 A. L. R. 1294 (annotation 1301, *et seq.*). Plaintiff makes much of the annotator's conclusion, as well he may, that:

"If separate judgments, in favor of different persons, are obtained and docketed at different times, against the same judgment debtor, and he afterwards acquires the legal title to real estate, the liens of the several judgments attach to the property at the same

instant of time, and neither judgment lien has priority over the other because of its prior docketing or rendition."

It is apparent that what all the courts in the cases there discussed were seeking to do was to construe their applicable statutes. In most of the cases such statutes are different from ours in that, as to some of them, no mention is made of after-acquired property; in others, while such property is referred to, there is nothing specifically stating what effect is to be given such language as is contained in ours; this for the simple reason that in none of them is such language used. As a consequence common-law principles were generally applied.

No two statutory enactments are alike except Oregon and California. That of Texas is similar but not identical with either. By referring to the statutes so construed it is obvious that they differ widely in many instances from our own and those of Oregon and California also. Particularly noticeable is the absence of our statutory language that the lien of the judgment is operative "from the time of such docketing," whether such property was then owned or afterwards came into the ownership of the judgment debtor. This we think is a very important distinction to bear in mind, not because any lien by virtue of the judgment could attach itself in any fashion to the after-acquired property until acquired, but because and only because the rights of the respective judgment creditors take effect by relation as to this property the same as if the property were in existence when the respective judgments were docketed.

That is the view adopted by the court in Creighton v. Leeds, Palmer & Co. 9 Or. 215, 216. The statute there construed read as follows:

"From the date of the docketing of a judgment as in this title provided, or a transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which may be afterwards acquired therein."

In construing the statute the court recognized the fact that there could be no lien until there was something to which it could be attached, yet, said the court (9 Or. 221):

*"A lien may not commence, but it may easily have a preference over adverse interests, to create which, and to prevent such adverse interests from dispossessing the creditor of his debt, is its object— by relation to a period before it actually took effect."* (Italics supplied.)

In Hertweck v. Fearon, 180 Cal. 71, 73, 179 P. 190, 191, the court reached the opposite conclusion. It was of opinion that it did not appear from the act that it was the legislative intention "to make the liens of docketed judgments on after-acquired property of the judgment debtor rank according to the order of the respective docketings," hence that one judgment could have no priority over the other under such circumstances. The court could "see no such intention expressed in our statute."

If, as has been heretofore suggested, the parties to this cause were holders of mortgages given by the judgment debtor upon this property, bearing the same dates and being recorded at the times respectively of the docketing of these judgments, no one could question the propriety of declaring defendant's mortgage prior to that of plaintiff's. This result would follow by virtue of the contracts and recording dates. But under our law, where a judgment creditor stands in the same position as a purchaser for value, the same result must necessarily obtain. Granting that liens, *as liens,* attach simultaneously, that does not always or necessarily solve the question of priority as between the lienors. There remains the question of *priority of right* as between them. That we think is settled by our statute. By so construing it we are but giving effect to the legislative purpose. Such construction brings about harmonious results under our statutes with respect to priority of liens whether created by contract or by statutory enactment.

Order affirmed.