**Walter K. NUSSBAUMER, et al., Appellants,**

v.

**John P. FETROW, et al., R & D Enterprises, Inc., Respondents,**

**Ray N. Welter Heating Co., et al., Defendants,**

**Tipar Investments, Respondent.**

No. C3–96–1402.

Court of Appeals of Minnesota.

Dec. 17, 1996.

Review Denied Feb. 26, 1997.

James A. Beitz, Michael C. Hagerty, Hagerty, Johnson, Albrightson & Beitz, P.A., Minneapolis, for appellants Walter K. Nussbaumer, et al.

Steven H. Berndt, Hance & Iverson, Ltd., Fridley, for respondents John P. Fetrow, et al.

John E. Daubney, St. Paul, for respondent R & D Enterprises, Inc.

William E. Dessert, New Brighton, for respondent Tipar Investments.

Considered and decided by SHORT, P.J., and RANDALL and DAVIES, JJ.

## OPINION

SHORT, Judge.

In this quiet title action, vendees of real property under unrecorded deeds claimed their property interest was superior to that of the judgment lien creditors of the record owner of the property. On appeal, the vendees argue the trial court erred in finding the judgment lien creditors' interests superior, and in concluding the vendees could not collaterally attack the original judgments.

## FACTS

In 1992, Kiewel and Associates, Inc. (judgment debtor), a nonparty to this action, filed a mechanic's lien foreclosure action against respondents John Fetrow and Jane Armstrong for nonpayment on a residential construction contract. Fetrow and Armstrong countersued and obtained a default judgment of $154,391.02 for the judgment debtor's poor construction of the residence. In a separate action, a court awarded respondent R & D Enterprises, Inc. (R & D) $14,507.47 against the judgment debtor for nonpayment of subcontractor labor. The judgments were docketed August 15 and September 9, 1994.

Prior to the docketing of the judgments, the judgment debtor sold an unimproved piece of property to Aspen Investment Company (Aspen), which in turn sold the property to DeWitt Bros. Homes, Inc. (DeWitt). DeWitt took possession of the property on April 22 and on May 1 erected a "DeWitt Bros. Construction" sign that listed the company's phone number and advertised the property for sale. From mid-July to September 1, DeWitt constructed a house on the lot. During this time, neither DeWitt nor Aspen took action to record the conveyances by which they took title to the property. Thus, when the judgments of Fetrow, Armstrong, and R & D (judgment lien creditors) were docketed in August and September of 1994, the judgment debtor remained the record owner of the property. The judgment lien creditors assert that, on the day of docketing, they perfected liens against the subject property by virtue of Minn.Stat. § 548.09, subd. 1 (1996).

Walter and Eva Nussbaumer (vendees) purchased the property from DeWitt in December 1994 and recorded the deed in January 1995. When the judgment lien creditors attempted to foreclose on the property, vendees filed this quiet title action, seeking a judgment that their interest in the property was superior to the judgment lien creditors' interests. The trial court enjoined the foreclosure sale pending the outcome of the litigation.

In a bifurcated bench trial, the trial court found for the judgment lien creditors, determining they were protected by the Minnesota Recording Act, Minn.Stat. § 507.34 (1996), because they had no notice of prior, unrecorded interests in the property at the time the judgments were docketed. The court also found that, although Fetrow's and Arm-

strong's original judgment against the judgment debtor was unsupported by the evidence, vendees could not collaterally attack the validity of that judgment.

## ISSUES

I. Are the judgment lien creditors' interests in the property superior to the interest of the vendees?

II. Are the original judgments subject to collateral attack?

## ANALYSIS

■ Because the parties have stipulated to the relevant facts, the only issue before us is whether the trial court erred in its application of the law. *Reads Landing Campers Ass'n v. Township of Pepin,* 546 N.W.2d 10, 13 (Minn.1996). We do not defer to the trial court's analysis of purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

### I.

■ Under Minnesota statutory law, every judgment becomes a lien against the judgment debtor's real property at the time of docketing. Minn.Stat. § 548.09, subd. 1 (1996); *Lowe v. Reierson,* 201 Minn. 280, 283, 276 N.W. 224, 225 (1937). A judgment lien provides the judgment creditor with the means to compel the judgment debtor to pay a debt. *Id.* at 284, 276 N.W. at 226. The Minnesota Recording Act affords the judgment creditor additional protection:

> Every conveyance of real estate shall be recorded * * *; and every such conveyance not so recorded shall be void as against * * * any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance.

Minn.Stat. § 507.34 (1996). The vendees argue the judgment liens never reached the subject property because the judgment debtor had no interest to attach in the property. However, this argument ignores the recording act's express protection of a judgment creditor's interest in property even if a judgment debtor has previously conveyed away that property under an unrecorded deed. *See Farmers' State Bank v. Cunningham,* 182 Minn. 244, 247, 234 N.W. 320, 322 (1931) (dismissing similar claim because recording act applies to such property). We conclude the judgment lien creditors perfected liens against all real property of which the judgment debtor was the record owner. The more difficult question before us is whether the judgment lien creditors are protected by the recording act against the vendees' unrecorded prior interest.

■ The recording act serves to shield a record owner's judgment creditors against claims to the real estate of which the creditors have no notice. *Lowe,* 201 Minn. at 285, 276 N.W. at 226; *see also* 6A Richard R. Powell, *Powell on Real Property* § 82.01(1), at 82–3 (Patrick J. Rohan, ed. 1996) (recognizing one object of recording statutes is to establish priority system to resolve conflicting claims to real estate). Therefore, the protection of the act is lost to creditors with actual, constructive, or inquiry notice of a third party's rights in the property inconsistent with the judgment debtor's. *See Oxborough v. St. Martin,* 142 Minn. 34, 35, 170 N.W. 707, 708 (1919) (holding unrecorded prior deed takes precedence if judgment creditor chargeable with notice before judgment attaches); *Northwestern Land v. Dewey,* 58 Minn. 359, 363–64, 59 N.W. 1085, 1085–86 (1894) (disallowing judgment creditor protection of recording act where creditor was on inquiry notice of tenant's rights in property); *Hentges v. P.H. Feely & Son,* 436 N.W.2d 488, 492 (Minn.App.1989) (assigning priority to unrecorded prior interest holders where judgment creditors had inquiry notice of unrecorded conveyance), *review denied* (Minn. Apr. 26, 1989).

■ Third-party possession of property constitutes inquiry notice to a judgment creditor if it is an "actual, open, visible, and exclusive possession," inconsistent with the title of the record owner. *Farmers' State Bank,* 182 Minn. at 246, 234 N.W. at 321; *accord* Powell, *supra,* § 82.02(1), at 82–57 (requiring that actual possession be "clearly hostile" to record title owner); *see Henschke v. Christian,* 228 Minn. 142, 146–47, 36

N.W.2d 547, 550 (1949) (imputing notice when creditor has knowledge of facts that "ought to have put him on an inquiry" and would have led to knowledge of prior conveyance); *see also Northwestern Land,* 58 Minn. at 364, 59 N.W. at 1086 (attributing to judgment creditor inquiry notice equivalent to that of bona fide purchaser); *cf. Wilkins v. Bevier,* 43 Minn. 213, 218, 45 N.W. 157, 158 (1890) (declining to impute notice of facts to which pertinent inquiries might possibly, but would not naturally, lead). The objective circumstances must indicate that someone other than the record owner has rights in the property; equivocal or temporary possession does not put a creditor on notice of an unrecorded conveyance. *Farmers' State Bank,* 182 Minn. at 246, 234 N.W. at 321 (finding no inquiry notice where outsider would not have seen change in possession).

■ On the dates the judgments were docketed, an inspection of the property would have revealed: (1) the construction of a residence, being performed by subcontract labor, and nearly complete; (2) "for sale" signs posted by DeWitt and Burnet Realty; and (3) the absence of any evidence of occupants. Because the judgment debtor was a construction contractor, the building of a house on the lot was not, so far as the judgment lien creditors were concerned, hostile to the judgment debtor's recorded title, but directly in line with it. The signs advertising the property for sale were also consistent with title in the judgment debtor. *See Clark v. Butts,* 73 Minn. 467, 473, 76 N.W. 263, 264 (1898) (noting "for sale" sign merely gave notice certain persons had property for sale, not that they owned it).

■ Public policy dictates that judgment creditors must be able to rely on the title shown in public records. *See id.* (recognizing failure to record leads to expensive litigation and loss of valuable property, and should, therefore, not be encouraged). Notice of title given by the registry is presumed to be certain, and we will not allow it to be overridden by equivocal evidence of an unrecorded change in ownership. *See id.* (noting contents of record are easy to prove, while indicia of notice are frequently uncertain and unsatisfactory). Thus, we conclude the objective facts existing at the time the judgments were docketed did not constitute exclusive and hostile possession of the property sufficient to put the judgment lien creditors on notice of DeWitt's interest. Under these circumstances, we cannot say the trial court erred in finding the vendees' interest in the property to be subject and secondary to the judgment creditors' liens.

## II.

■ The vendees also argue if their interest in the property is subject to the judgment liens, they should be permitted to collaterally attack the validity of those judgments. However, public policy favors the finality of judgments and the ability of parties to rely on court orders. *Hawley v. Knott,* 178 Minn. 225, 229, 226 N.W. 697, 699 (1929); *State v. Nodes,* 538 N.W.2d 158, 160 (Minn.App.1995), *review granted* (Minn. Dec. 20, 1995), *appeal dismissed* (Minn. Feb. 9, 1996). Thus, Minnesota law does not permit the collateral attack on a judgment valid on its face. *Northwest Holding v. Evanson,* 265 Minn. 562, 569, 122 N.W.2d 596, 601 (1963). A judgment alleged to be merely erroneous, or founded upon irregularities in the proceedings not going to the jurisdiction of the court, is not subject to attack. *Sache v. Wallace,* 101 Minn. 169, 171, 112 N.W. 386, 387 (1907); *see also Lange v. Johnson,* 295 Minn. 320, 323, 204 N.W.2d 205, 208 (1973) (stating a void judgment is one in which court lacks jurisdiction over subject matter or parties); *Jones,* 141 Minn. at 355, 170 N.W. at 226 (requiring that lack of jurisdiction affirmatively appear on face of record to permit collateral attack).

The vendees argue the judgment of Fetrow and Armstrong was speculative and based on findings that did not support the award; they do not contest the trial court's jurisdiction over the parties or subject matter of the dispute. Because the vendees' allegations cannot support a collateral attack on a final judgment, the trial court properly dismissed their claim.

## DECISION

The judgment lien creditors did not have knowledge of sufficient facts to put them on

inquiry notice of rights in the property inconsistent with their judgment debtor's interest. Therefore, by virtue of the recording act, the judgment liens are superior to the interest of the vendees under unrecorded prior deeds. Furthermore, the vendees may not collaterally attack the validity of the judgments attached to their property.

Affirmed.