WASHINGTON MUTUAL BANK,
F.A., Respondent,

v.

John ELFELT, Respondent,

Stacey Elfelt, Respondent,

Lake Forest Townhomes Condominium
Association, Appellant.

No. A07–1758.

Court of Appeals of Minnesota.

Sept. 30, 2008.

Allen E. Christy, Jr., Patrick C. Summers, Mackall, Crounse & Moore, Minneapolis, MN, for respondent Washington Mutual Bank.

John Elfelt, Stacey Elfelt, Anoka, MN, pro se respondents.

Erik F. Hansen, Joel A. Hilgendorf, Chad A. Johnson, Hellmuth & Johnson, Eden Prairie, MN, for appellant.

Considered and decided by
HALBROOKS, Presiding Judge;
SCHELLHAS, Judge; and HUSPENI,
Judge.

## O P I N I O N

HUSPENI, Judge.*

Appellant challenges the district court's grant of summary judgment that reversed the priority of encumbrances as between respondent and a third-party lender and made respondent the primary mortgagee. As a result of this action, appellant's interest in the property, which occupied a secondary priority position, was terminated. Appellant now argues that (1) the district court committed reversible error by failing to properly consider its status as a bona fide purchaser under Minn.Stat. § 507.34,

and (2) respondent is equitably estopped from asserting a claim to the property. We reverse.

## FACTS

Helen Witta, now deceased, was the sole owner of the real property that is now the subject of this legal dispute. The property, a condominium, is part of appellant Lake Forest Townhomes Condominium Association (Association), a non-profit corporation.[1] Through ownership of the condominium, Witta became a member of the Association and was thus obligated to abide by the terms and conditions established in its "Declaration of the Association," including the payment of certain fees and assessments.

In September 2003, Witta decided to refinance a previous mortgage loan from TCF Bank through Tradition Mortgage, LLC. On October 1, 2003, John Zydowsky, a Senior Lending Officer at Tradition Mortgage, closed a refinance transaction with Witta in the amount of $90,000 and was granted a mortgage in return. This mortgage was subsequently sold and reassigned to respondent Washington Mutual Bank the same day. On October 16, 2003, Washington Mutual disbursed the majority of the loan proceeds to TCF Bank for the purpose of satisfying Witta's prior mortgage. A certificate of satisfaction was subsequently recorded by TCF Bank, leaving Washington Mutual as the sole mortgagee.

Subsequent to the transaction involving the $90,000 mortgage, Zydowsky contacted Wells Fargo Bank on behalf of Witta for the purpose of arranging a home-equity

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The Association, a common-interest community, was formed following the filing of a condominium declaration on April 28, 1994. As a common-interest community, the Association is governed by the Minnesota Common Interest Ownership Act (MCIOA), Minn.Stat. §§ 515B.1–101 to .4–118 (2006).

loan in the amount of $22,500. At this time, Zydowsky informed Wells Fargo that any mortgage granted would be junior to the Washington Mutual mortgage. Around October 17, 2003, Zydowsky faxed Wells Fargo a variety of documents, including a copy of the title-insurance commitment which also indicated that the Wells Fargo mortgage would be junior to the Washington Mutual mortgage. The mortgage securing the home-equity loan was executed on October 24, 2003, and recorded on December 10, 2003. The prior Washington Mutual mortgage, however, was recorded on January 8, 2004. Thus, the order of recording was inconsistent with the order of execution of the mortgages.

Witta passed away in February 2005, and on May 1, 2005, the Association executed a lien statement for unpaid assessments and other related charges. This lien statement was recorded on May 18, 2005. However, by operation of Minn. Stat. 515B.3–116(b) of the MCIOA, the Association lien statement did not occupy a tertiary position, but rather a secondary position in terms of priority. The record in the county recorder's office thus reflected the following order of priority for the property's encumbrances: (1) Wells Fargo mortgage, (2) Association lien statement, and (3) Washington Mutual mortgage.

### Foreclosures

Washington Mutual was the first to foreclose its mortgage after default, and a sheriff's sale was subsequently held on July 21, 2005. Washington Mutual was the highest bidder, and the statutory redemption period expired without any redemption.

The Association next foreclosed its lien, and a sheriff's sale was held on August 16, 2005. The Association was the highest bidder, and the statutory redemption period expired without any redemption. Prior to this sale, on July 21, 2005, the Association sent Washington Mutual a letter advising it of the Association's superior position by virtue of the MCIOA, as well as informing it that its interest would be extinguished following any foreclosure.

Finally, Wells Fargo foreclosed its mortgage after default, and a sheriff's sale was held on October 6, 2005. Respondents John and Stacey Elfelt were the highest bidders for the sum of $26,000 and received a sheriff's certificate for the property. The statutory redemption period was set to expire on April 6, 2006.

On April 6, 2006, the Association tendered $27,300 to the Hennepin County Sheriff's Office to redeem from the Elfelts, while Washington Mutual tendered $28,200 to the Hennepin County Sheriff's Office to "protect its interests" and redeem from the Elfelts.[2]

### Legal Action

Washington Mutual commenced the present lawsuit to establish rightful ownership of the property. In response, the Association claimed a superior interest, while the Elfelts sought an order directing the sheriff to release the redemption money deposited by the Association.

The Association brought a motion for summary judgment. In response, Washington Mutual requested a continuance pursuant to Minn. R. Civ. P. 56.06, to complete discovery of the issue surrounding Wells Fargo's actual notice of Wash-

---

**2.** Counsel for the Association contacted the Hennepin County Sheriff's Office and obtained the exact dollar amount needed to redeem. Counsel for Washington Mutual also contacted the Hennepin County Sheriffs Offices but received no response. As a result, they made a conservative estimate as to the amount needed to redeem.

ington Mutual's superior position. The district court granted a continuance, reasoning that the issue of prior notice was dispositive of the entire matter. The Association later renewed its motion for summary judgment, while Washington Mutual brought a cross-motion for summary judgment.

At a hearing, Washington Mutual produced an affidavit from Zydowsky, which definitively established that "Wells Fargo had actual knowledge of Washington Mutual's superior interest in the property." As a result, the district court ruled that Wells Fargo was not a subsequent good-faith purchaser under Minn.Stat. § 507.34, the Minnesota Recording Act. In an order dated July 17, 2007, it granted Washington Mutual's motion for summary judgment, reversed the priority of the encumbrances as between Wells Fargo and Washington Mutual, and determined that the Association's argument regarding being a good-faith purchaser was "irrelevant," as it always occupied a secondary position under the MCIOA. Accordingly, as Washington Mutual was declared the holder of the first mortgage, all other interests were deemed extinguished in the wake of the expiration of the redemption period following the July 21, 2005 foreclosure.

In regard to the redemption money tendered on April 6, 2006, both parties had previously executed a "stipulation for order to release funds" on February 27, 2007. This document successfully requested that the district court issue an order directing the Hennepin County Sheriff's Office to pay the Elfelts $27,300, the exact redemption amount. The remaining $28,200 that had initially been paid by

Washington Mutual was later returned to it via court order. The Association sought to challenge this release of funds, but was denied any relief. In a letter dated August 8, 2007, the district court stated:

[B]ecause the Washington Mutual mortgage was the first mortgage, Washington Mutual never had any duty or obligation to redeem from foreclosure of the junior Wells Fargo mortgage. As Washington Mutual had no duty to redeem from foreclosure of the junior mortgage, Washington Mutual was entitled to a refund of the $28,200 it had deposited with the Court.

The matter was then declared closed.[3] This appeal followed.

## ISSUES

I. Did the district court commit reversible error by failing to properly consider the Association's status as a bona fide purchaser under Minn.Stat. § 507.34?

II. Is the Association equitably estopped from asserting a claim to the property?

## ANALYSIS

### I.

The standard of review for summary judgment is a determination of (1) whether the district court erred in its application of the law and (2) whether any genuine issues of material fact exists. *Harbal v. Fed. Land Bank of St. Paul*, 449 N.W.2d 442, 446 (Minn.App.1989), *review denied* (Minn. Feb. 21, 1990). In the present matter, the Association does not allege the existence of actual issues of material fact. Rather, it contends that the district court "miscon-

---

**3.** Apparently because the question was not at issue in the district court, the district court decided this matter without explicitly identifying whether the property at issue is registered property or abstract property. On appeal, the parties each cite caselaw involving registered property as well as caselaw involving abstract property without focusing on the distinction between these two types of property. Therefore, our opinion does the same.

strued" Minn.Stat. § 507.34, the Minnesota Recording Act. The construction of a statute is a question of law subject to de novo review by this court. *Harbal*, 449 N.W.2d at 446.

■ Minn.Stat. § 507.34 provides, in part:

Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded, and as against any attachment levied thereon or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance.

Accordingly, Minnesota is a race-notice jurisdiction, meaning that "a bona fide purchaser who records first obtains rights to the property which are superior to a prior purchaser who failed to record." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 524 (Minn.1990). A "purchaser in good faith" or bona fide purchaser is one who provides valuable consideration without actual, constructive, or implied notice of others' inconsistent outstanding rights. *Miller v. Hennen*, 438 N.W.2d 366, 369 (Minn.1989). However, any purchaser with such knowledge is not entitled to the protection of the Minnesota Recording Act. *Minn. Cent. R.R. Co. v. MCI Telecomms. Corp.*, 595 N.W.2d 533, 537 (Minn. App.1999). As such, "there is no need for parties to race to the Registrar of Titles because mortgage priority as established by a filing order is defeated by actual notice or knowledge of a superior mortgage or encumbrance." *In re Ocwen Fin. Servs., Inc.*, 649 N.W.2d 854, 857 (Minn.

App.2002), *review denied* (Minn. Nov. 19, 2002).

■ Notwithstanding these limitations, section 507.34 serves as a shield to protect parties against claims to the real estate of which they had no prior notice. *Nussbaumer v. Fetrow*, 556 N.W.2d 595, 598 (Minn.App.1996), *review denied* (Minn. Feb. 26, 1997). This is of particular importance given the relatively high costs of real estate disputes and the potential loss of the real estate itself. *Id.* at 599 (citing *Clark v. Butts*, 73 Minn. 467, 473, 76 N.W. 263, 264 (1898)). Equally important, section 507.34 also allows purchasers to rely on the record, *Miller*, 438 N.W.2d at 369; *Claflin v. Commercial State Bank of Two Harbors*, 487 N.W.2d 242, 248 (Minn.App. 1992), *review denied* (Minn. Aug. 4, 1992), as the order of priority provided by the registry is "presumed to be certain" and will not be overridden by equivocal evidence of an unrecorded change. *Nussbaumer*, 556 N.W.2d at 599.

The Association argues that the district court erred in ignoring the status of the Association as a bona fide purchaser, which status granted it the right "to rely upon the order, and [the] priority as it appeared in the county recorder's office." Specifically, the Association asserts that as a bona fide purchaser it was entitled to the protections of the Minnesota Recording Act because it was a purchaser with no knowledge of Washington Mutual's superior claim or any other recording conflict. The Association also claims the protection of Minn.Stat. § 515B.3–116(b) or MCIOA, which states in part:

A lien under this section is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes, or takes subject to, [and] (ii) any first

mortgage encumbering the fee simple interest in the unit, or, in a cooperative, any first security interest encumbering only the unit owner's interest in the unit[.]

The interplay between the Minnesota Recording Act and MCIOA is at the heart of the issue that must be resolved in this case. Essentially, the Association argues that while it knew that pursuant to MCIOA, its lien was junior to a first mortgage encumbering the fee interest, it was also entitled to the protection of the Minnesota Recording Act in relying on its understanding that Wells Fargo, not Washington Mutual, was that first mortgage holder because of the order of recording. For the reasons set forth below, we agree with the Association.

■ Washington Mutual attempts to counter the argument of the Association on several grounds, the first of which being that the Association had both constructive and actual notice of Washington Mutual's senior mortgage and was therefore an ineligible bona fide purchaser. Special emphasis is given by Washington Mutual to the fact that its mortgage was executed and dated on its face in advance of the Wells Fargo mortgage and that it was evident from the face of the two mortgages that Washington Mutual's mortgage was a first mortgage and that the Wells Fargo mortgage secured a second position home-equity line of credit. This argument lacks merit.

■ Actual knowledge is generally "given directly to, or received personally by, a party," *Black's Law Dictionary* 1090 (8th ed. 2004), while as a matter of law, constructive notice of any properly recorded instrument is imputed to all purchasers

even though the purchaser has no actual notice of the record. *MCI,* 595 N.W.2d at 538–39; *Chaney v. Minneapolis Cmty. Dev. Agency,* 641 N.W.2d 328, 333 (Minn. App.2002), *review denied* (Minn. May 28, 2002). However, a recorded interest is constructive notice only of the facts appearing on the face of the record. *MCI,* 595 N.W.2d at 538.

■ Washington Mutual next asserts that since its mortgage was recorded before the Association's lien was either executed or filed and before it tendered any redemption funds, "the entire world" had notice that Washington Mutual was "first in time" or that subsequent parties took their interests subject to it. However, while the Association undeniably had actual notice at the time its lien was filed that there were two other mortgages or encumbrances already on the property, the record is nonetheless entirely devoid of any evidence suggesting that the Association had actual notice that the mortgages in question had been recorded in the improper order. In fact, while Washington Mutual correctly points out that its mortgage was executed before that of Wells Fargo, it cannot be overlooked that it was recorded subsequent to the Wells Fargo mortgage. As a result, the Association cannot be said at the time it recorded its lien statement to have had any actual knowledge of the "inconsistent outstanding rights" of Washington Mutual. As previously stated, Minnesota is a race-notice jurisdiction. The Association, in viewing both the filing dates and registration numbers of the Washington Mutual and Wells Fargo mortgages, was entitled to rely on Wells Fargo being the primary mortgagee by virtue of its recording first.[4] Thus, we

4. In addition, even if we were to expand the duty of the Association to include examination of the face of the two documents, such examination reveals no specific identifying information that would constitute constructive notice of mortgage priority. *See Ocwen Fin. Servs.,*

cannot find that the Association had either actual or constructive knowledge of the incorrect order of the mortgage priority.[5]

The district court addressed actual knowledge in the context of finding that Wells Fargo had such knowledge regarding the superiority of Washington Mutual's mortgage. This finding was based on the affidavit of Zydowsky, as well as the title insurance commitment sent to Wells Fargo. Neither of these documents, however, was recorded nor readily available for the Association to view in the county recorder's office. Unquestionably, as between Washington Mutual and Wells Fargo, each knew whose mortgage was superior. But can that knowledge be imputed to the Association? We are aware of no theory of law under which such imputation could be made in this case. And we believe that the two statutes implicated here permit no other resolution than the one we have reached. Moreover, even if imputing such knowledge to the Association were legally a possibility, we cannot say that this record would support that imputation.

■ Washington Mutual also advances the argument that the Association was not

a purchaser and did not acquire its lien in reliance on any information in the public record, because its lien came into existence purely by operation of its Condominium Declaration. There is no merit in this argument. While the Association's lien did come into existence by virtue of its Declaration,[6] it nevertheless clearly foreclosed the lien based upon the priority reflected in the county recorder's office, which at that time showed the following order: (1) Wells Fargo mortgage, (2) Association lien statement, and (3) Washington Mutual mortgage. Moreover, the Association became a purchaser under Minn.Stat. § 507.34 by tendering the highest bid at its foreclosure sale on August 16, 2005.[7]

■ Finally, Washington Mutual asserts that the Association was a judgment creditor subject to both the rights and limitations of the MCIOA, under which the Association is granted a significant benefit: liens for assessments or other charges thereunder are superior to essentially all liens save for a first mortgage. Washington Mutual argues, and the district court appeared to accept, that the Association is

---

649 N.W.2d at 857 (holding that registration numbers "are conclusive evidence of the order in which the mortgages [are] filed"); *Mavco, Inc. v. Eggink,* 739 N.W.2d 148, 158 n. 7 (Minn.2007) (holding that a mortgage is unenforceable against third parties until recorded).

**5.** Given the absence of actual knowledge, the Association may also be found to be lacking implied notice of the improper mortgage priority.

Implied notice differs from constructive notice in that, "[it] relates to what one can learn by reasonable inquiry. It arises from actual notice of the circumstances, and not from constructive notice." Implied notice charges a person with notice of everything that he could have learned by inquiry where there is sufficient actual notice to put him on guard and excite attention.

*In re Vondall,* 364 B.R. 668, 671 (B.A.P. 8th Cir.2007) (quotation omitted).

**6.** Article 8.3 of the Condominium Declaration for Lake Forest Townhomes reads:

Assessments are Liens. The Association has a lien on a Unit for any assessment levied against that Unit from the time the assessment becomes due. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due. Fees, charges, late charges, fines, and interest charges are enforceable as assessments and included in the lien of an assessment.

**7.** *See* Minn.Stat. § 507.01 (2006) (defining purchaser as "every person to whom any estate or interest in real estate is conveyed for a valuable consideration and every assignee of a mortgage, lease, or other conditional estate.").

not permitted to rely on what it "thinks" is the first mortgage. Thus, the district court deemed "irrelevant" the Association's argument that it was a bona fide purchaser and concluded that a lien such as that held by the Association is always junior to any first mortgage, no matter what the circumstances of a particular case might be. This reasoning is flawed in the context of the facts here.

 In order to comply with the plain mandate of the MCIOA, common-interest communities, such as the Association, must be able to properly determine which mortgagee occupies the primary position. This determination, in turn, can only be accomplished by reference to the order of priority as maintained in the county recorder's office and otherwise governed by section 507.34. Accordingly, as noted earlier, there is an inherent interconnectedness between these two statutes. The Association foreclosed its lien and later sought to redeem its interest based not only upon a reliance on the recorded priority, but also on an understanding that it occupied a secondary position to Wells Fargo and a superior position to Washington Mutual by virtue of the MCIOA. Moreover, we note that the Association's proffered result does not alter the language or eliminate any restrictions of the MCIOA by placing itself in a superior position to both Washington Mutual and Wells Fargo. Rather, the Association is merely seeking to redeem as a bona fide purchaser from Wells Fargo, the party it then properly perceived to be the primary mortgagee based on the record, and therefore the only party with the ability to extinguish the interest of the Association. Clearly, the extension of protection to bona fide purchasers under the Minnesota Recording Act is not contrary to the plain language of the MCIOA and the two statutes are both interconnected and compatible. "Public policy dictates that judgment creditors must be able to rely on the title shown in public records." *Nussbaumer,* 556 N.W.2d at 599.

Thus, while the district court's decision as to knowledge shared by Wells Fargo and Washington Mutual was correct, that decision could not be arbitrarily applied to the Association without first considering its status as a bona fide purchaser. Here, such consideration would have served to preserve the Association's interest in the property in question.

## II.

Inasmuch as we have resolved the issue of priority among Washington Mutual, Wells Fargo, and the Association, we need not address the Association's estoppel argument. Nor need we address the issue raised by the parties regarding escrowed funds, as we conclude that our resolution of the priority issue also resolves any question about the funds.

## D E C I S I O N

Because the district court failed to consider the Association's rightful status as a bona fide purchaser under the Minnesota Recording Act in conjunction with its established priority under the Minnesota Common Interest Ownership Act, we reverse. Accordingly, as the Association properly redeemed from Wells Fargo in the amount of $27,300, it is entitled to its interest in the property.

**Reversed.**