*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0711**

In the Matter of the Civil Commitment of:
Rachel B. Sabin.

**Filed September 12, 2016
Affirmed in part and remanded
Halbrooks, Judge**

LeSueur County District Court
File No. 40-PR-16-139

Jennifer L. Thon, Ryan B. Magnus, Jones and Magnus, Mankato, Minnesota (for appellant)

Brent Christian, LeSueur County Attorney, Catherine A. Weniger, Megan E. Gaudette Coryell, Assistant County Attorneys, LeCenter, Minnesota (for respondent county)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges the district court's order continuing her civil commitment as a mentally ill person. She argues that (1) the district court erred by finding that the petition at issue here is a petition for continued commitment rather than initial commitment, (2) the district court's order does not contain findings required under the statute to order a continued commitment, and (3) the evidence is insufficient to support

the district court's conclusion that she meets the statutory criteria for continued commitment. Because the district court's finding that this is a petition for continued commitment rather than an initial commitment is not clearly erroneous, we affirm in part. But because the district court did not make the specific findings required under the statute, we remand for further findings.

**FACTS**

On February 26, 2014, the district court issued an order finding appellant Rachel B. Sabin to be mentally ill under the Minnesota Commitment and Treatment Act, Minn. Stat. §§ 253B.01-.24 (2014),[1] and committing her to the commissioner of human services for 180 days. On August 29, 2014, the district court issued an order finding that Sabin continues to be mentally ill and continuing her commitment for 180 days. On February 27, 2015, the district court issued an order finding that Sabin continues to be mentally ill and continuing her commitment for 12 months. Nothing in the record indicates that Sabin appealed the district court's order initially committing her or the two subsequent orders continuing her commitment.

On February 12, 2016, Le Sueur County Department of Human Services (the county) petitioned the district court to continue Sabin's commitment. The district court held a hearing to determine the need for Sabin's continued commitment. The district court heard testimony from Linda Marshall, Ph.D., LP, the court-appointed examiner;

---

[1] We cite the most recent version of Minn. Stat. §§ 253B.01-.24 because it has not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case" unless doing so would affect vested rights or result in a manifest injustice).

2

Penny Zwecker, Ph.D., whom Sabin requested as a second examiner; MaLinda Henderson, a psychiatric nurse practitioner who provides psychiatric services to Sabin; Sabin's case manager from the county; and two employees from Haugbeck Homes, an adult foster home where Sabin resides, who regularly interact with Sabin.

Dr. Marshall testified that Sabin meets the criteria to be diagnosed with schizophrenia. Dr. Marshall stated that schizophrenia is a substantial psychiatric disorder that affects thought, mood, perception, orientation, and memory. Dr. Marshall testified that Sabin has engaged in conduct that constitutes an attempt to physically harm herself, including taking Adderall that resulted in a hospital visit and taking another medication that was not prescribed for her. Dr. Marshall testified that, as a result of this behavior, Sabin poses a substantial likelihood of physical harm to herself if she is not committed. According to Dr. Marshall, there is an imminent danger of Sabin causing harm to herself if she were released from commitment because Sabin may not follow through with taking her medications as prescribed or may take medications that were not prescribed for her.

Dr. Zwecker diagnosed Sabin with paranoid schizophrenia. Dr. Zwecker observed that Sabin has "prominent paranoid thoughts," including a delusion that her former boss is harassing her in various ways. Like Dr. Marshall, Dr. Zwecker testified that without continuing the commitment, Sabin poses a threat of harm to herself because of her taking medications that are not prescribed for her. Dr. Zwecker, Dr. Marshall, and Henderson all agreed that Sabin taking medications that are not prescribed for her could make her a danger to herself and could exacerbate her symptoms.

3

The district court ordered that Sabin's commitment continue for not more than six months. The district court concluded that Sabin continues to be mentally ill, that involuntary commitment is necessary for her protection or the protection of others, and that there is no alternative to involuntary commitment. But the district court made no factual findings regarding Sabin's conduct that formed the basis for the continued commitment. This appeal follows.

## D E C I S I O N

### I.

Sabin argues that the district court erred by finding that the petition at issue here is a petition for recommitment rather than a petition for initial commitment because of "procedural irregularities" in her prior commitment proceedings. The district court found that this is a petition for recommitment but did not explain its reasoning for that determination. We will not reverse the district court's findings of fact unless they are clearly erroneous. *In re McGaughey*, 536 N.W.2d 621, 623 (Minn. 1995).

The standard of proof for an initial commitment is higher than the standard of proof for a continued commitment. *Compare* Minn. Stat. § 253B.02, subd. 13 (defining "person who is mentally ill" as one who poses a substantial likelihood of physical harm as demonstrated by "a recent attempt or threat to physically harm self or others" or "failure to obtain necessary food, clothing, shelter, or medical care"), *with* Minn. Stat. § 253B.12, subd. 4 (specifying that, in determining whether a person continues to be mentally ill, the district court need not find "a recent attempt or threat to physically harm self or others, or a recent failure to provide necessary personal food, clothing, shelter, or

4

medical care" but instead "must find that the patient is likely to attempt to physically harm self or others, or to fail to provide necessary personal food, clothing, shelter, or medical care unless involuntary commitment is continued").

Sabin contends that errors that occurred in the second extension of her commitment render this case an initial commitment rather than a continued commitment. First, she argues that a motion was filed requesting that her commitment continue for 12 months instead of a petition, which the statute requires. *See* Minn. Stat. § 253B.13, subd. 1 (stating that a "commitment may not be continued unless a new *petition* is filed" (emphasis added)). Second, Sabin alleges that because she already spent six months under the first extension of her commitment, the 12-month extension of her second continued commitment resulted in an unlawful continued commitment of 18 months. *See id.* (stating that a continued commitment may not exceed 12 months). Third, Sabin argues that it is not clear from the order which legal standard the district court used in the second recommitment and that the order does not contain the required findings of fact and conclusions of law.

Sabin's arguments constitute an impermissible collateral attack on her prior commitment orders. This court has stated:

> [P]ublic policy favors the finality of judgments and the ability of parties to rely on court orders. Thus, Minnesota law does not permit the collateral attack on a judgment valid on its face. A judgment alleged to be merely erroneous, or founded upon irregularities in the proceedings not going to the jurisdiction of the court, is not subject to attack.

5

*Nussbaumer v. Fetrow*, 556 N.W.2d 595, 599 (Minn. App. 1996) (citations omitted), *review denied* (Minn. Feb. 26, 1997); *see also Dieseth v. Calder Mfg. Co.*, 275 Minn. 365, 370, 147 N.W.2d 100, 103 (1966) ("Even though the decision of the [district] court in the first order may have been wrong, if it is an appealable order it is still final after the time for appeal has expired."). Sabin concedes that the district court had both personal and subject-matter jurisdiction over her previous commitments. She is merely alleging "irregularities in the proceedings not going to the jurisdiction of the court," and her prior commitments are therefore "not subject to attack." *Nussbaumer*, 556 N.W.2d at 599. Because Sabin was subjected to prior commitments based on court orders that went unchallenged, the district court's finding that this is a petition for recommitment rather than an initial commitment is not clearly erroneous.

## II.

Sabin argues that the district court's order does not contain the requisite specificity in the findings of fact and conclusions of law. "In reviewing a commitment, we are limited to an examination of whether the district court complied with the requirements of the commitment act." *In re Civil Commitment of Janckila*, 657 N.W.2d 899, 902 (Minn. App. 2003).

The district court cannot order a continued commitment of a mentally ill person "unless the court finds by clear and convincing evidence that (1) the person continues to be mentally ill . . . ; (2) involuntary commitment is necessary for the protection of the patient or others; and (3) there is no alternative to involuntary commitment." Minn. Stat. § 253B.12, subd. 4. "In determining whether a person continues to be mentally ill, . . .

the court need not find that there has been a recent attempt or threat to physically harm self or others, or a recent failure to provide necessary personal food, clothing, shelter, or medical care." *Id.* "Instead, the court must find that the patient is likely to attempt to physically harm self or others, or to fail to provide necessary personal food, clothing, shelter, or medical care unless involuntary commitment is continued." *Id.* When the district court orders a continued commitment, the law mandates that "the findings of fact and conclusions of law shall specifically state the conduct of the proposed patient which is the basis for the final determination." *Id.*, subd. 7. The district court must also consider less-restrictive alternatives to commitment and state its reasons for rejecting the alternatives. *Id.*

Here, the district court did not make any specific findings about Sabin's conduct required by Minn. Stat. § 253B.12, subd. 7, that established the basis for its determination that she requires continued commitment. The district court's order instead simply recites the requirements of Minn. Stat. § 253B.12, subd. 4, in conclusory fashion. This case is similar to *In re Stewart*, 352 N.W.2d 811 (Minn. App. 1984). In that case, the district court ordered continued commitment of Stewart after he was found to be schizophrenic. *Stewart*, 352 N.W.2d at 812. This court concluded that, while the evidence supported the district court's decision, the district court failed to comply with Minn. Stat. § 253B.12, subd. 7, by not specifying the conduct that supported its determination, stating that the statutory criteria for commitment had been met, or discussing less-restrictive alternatives. *Id.* at 812-13. We remanded the case for further findings. *Id.* at 813.

The county argues that the district court's findings are adequate because the record is sufficient to support them. The county cites *In re Adams*, where this court stated, "In civil cases, where the record is reasonably clear and the facts not seriously disputed, the judgment of the trial court can be upheld in the absence of trial court findings[.]" 352 N.W.2d 117, 119 (Minn. App. 1984) (alteration in original) (quotation omitted). But the *Adams* court clarified that it appears that the legislative intent behind Minn. Stat. § 253B.12, subd. 7, was for district courts to make specific findings in civil-commitment cases. *Id.* The district court in *Adams* "found that Adams was not medically stabilized, that he did not acknowledge the need to take medications on a regular basis or to bring his behavior under control, and that there is no community based treatment program that is willing to accept him at the present time." *Id.* This court concluded that those findings were sufficient for the district court to determine that the statutory criteria for continued commitment had been met. *Id.* But we stated that "we encourage specific findings on each of the statutory requisites for continued commitment and a clear recitation of the evidence supporting the court's conclusion. Careful attention should be paid to the language of the statute." *Id.* This case is distinguishable because, whereas the district court in *Adams* made some, albeit scant, factual findings, the district court here made no factual findings about Sabin's conduct in support of its conclusion that she meets the statutory requirements for continued commitment. Under these circumstances, where the district court did not comply with the statute's explicit requirement for specific findings, we must remand for the district court to make findings about Sabin's conduct that support its conclusion that she requires continued commitment.

In addition to the lack of factual findings, Sabin notes several errors in the district court's order. For example, some of the district court's stated reasons for rejecting less-restrictive alternatives to commitment are clearly erroneous. The district court found that Sabin's "needs require inpatient hospitalization in a state facility" and that she has an "inability to care for self outside of a hospital setting." These findings are clearly erroneous because Sabin has been residing in an adult foster home, not a hospital, and neither Dr. Marshall nor Dr. Zwecker testified that Sabin currently requires inpatient hospitalization. The district court also found that Sabin did not request an independent examiner. This finding is clearly erroneous because the record plainly indicates that Sabin requested Dr. Zwecker to be her second examiner. And the district court found by a "preponderance of the evidence" that Sabin is likely to physically harm herself or others, but the statute requires "clear and convincing evidence" when ordering a continued commitment. *See* Minn. Stat. § 253B.12, subd. 4. The district court can remedy these errors on remand.

Sabin also argues that the evidence is insufficient to prove that she meets the statutory criteria for continued commitment. But effective appellate review of this argument is not possible until the district court makes findings about what evidence it relied on in reaching its conclusions. Whether to reopen the record on remand is discretionary with the district court.

**Affirmed in part and remanded.**