**In re Melvin COOK and Marie Cook, Debtors.**

**Melvin COOK and Marie Cook, Plaintiffs,**

**v.**

**FARMERS ELEVATOR COOP OF SLEEPY EYE, Defendant.**

**In re Donald COOK, Debtor.**

**Donald COOK, Plaintiff,**

**v.**

**FARMERS ELEVATOR COOP OF SLEEPY EYE, Defendant.**

Bankruptcy Nos. 3–84–2283, 3–84–2284.
Adv. Nos. 85–0196, 85–0197.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Oct. 17, 1986.

Dennis D. O'Brien, Patrick Moriarty, New Ulm, Minn., for plaintiffs.

Clark A. Tuttle, III, New Ulm, Minn., for defendant.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on cross-motions for summary judgment submitted by the parties in these consolidated actions to determine the validity, priority and extent of a lien under 11 U.S.C. §§ 506(a) and (d). Upon agreement of the parties, the issues were submitted to the Court upon stipulation of facts without an evidentiary hearing. Based upon the file and records herein, the Court, being fully advised in the matter, makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### FACTS

Melvin Cook, Donald Cook and Marie Cook, prior to filing their bankruptcy peti-tions, jointly operated a farming business. They owned a 230–acre parcel of farm land which became property of the bankruptcy estates when Donald Cook filed his Chapter 7 bankruptcy case on December 14, 1984, and Melvin and Marie Cook filed their joint petition on the same date. The three also owned a 120–acre parcel of real estate out of which each of them claimed an undivided one-third fee interest as exempt homestead.

During the course of the farming operation, Donald, Melvin and Marie (hereinafter collectively referred to as "Debtors") granted a first mortgage on all their real property to the Federal Land Bank Association. Subsequently, the Debtors also granted a second mortgage to the Defendant, Farmers Elevator Coop of Sleepy Eye, Minnesota. This second mortgage, however, was limited to 110 acres of the non-homestead 230–acre parcel. The parties agree to the following values and amounts owing as of the date the petitions were filed:

1. The fair market value of all 350 acres is $379,700.00.

2. The fair market value of the 110 acres (the only parcel of land subject to both mortgages) is $137,260.00.

3. The fair market value of the full 230 nonexempt acres is $239,500.00.

4. The balance due Defendant on its second mortgage on the date of filing was $61,460.60.

5. The balance due Federal Land Bank on its first mortgage on the date of filing was $201,282.11, with interest accruing thereafter at a rate of $73.09 per day.

Plaintiffs seek determination that the lien of Defendant Farmers Elevator Coop of Sleepy Eye has no value and is not an allowed *secured* claim to any extent. Because Defendant has no allowed secured claim, Plaintiffs argue, its lien is void under 11 U.S.C. § 506(d). They assert that under equitable principles of marshaling, Plaintiffs could force Federal Land Bank to satisfy its mortgage first out of nonexempt property, leaving Defendant's second mortgage without any value. Plaintiffs also

argue that, even if marshaling is not available to them, MINN.STAT. § 582.04 allows a debtor to force a foreclosing mortgagee to first sell all nonexempt property covered by its mortgage before resorting to exempt property.

Defendant argues that it has a greater claim to the principles of equity, asserting that the parties intended that all property be used to satisfy all debts. Consequently, Defendant argues, the doctrine of marshaling should be considered in its favor in light of Defendant's superior equity.[1] Additionally, Defendant asks the Court to recognize other various equitable doctrines such as subrogation, which would give value to its second position.[2]

Defendant argues that these equitable principles, if employed in a foreclosure proceeding initiated by Federal Land Bank, could result in a lien in favor of Defendant on the exempt property; or allocation of Federal Land Bank's mortgage across all exempt and nonexempt acreage alike, leaving sufficient equity in the nonexempt 110 acres subject to Defendant's mortgage. Availability of the equitable doctrines, according to Defendant, gives present value to its second mortgage.[3]

## II.

Though Plaintiffs ask the Court to recognize their right to employ a marshaling doctrine to their benefit, they need not rely on that equitable doctrine to force Federal Land Bank to sell their nonexempt property first. The same protection is provided them statutorily by MINN.STAT. § 582.04 which provides in pertinent part:

> In all proceedings to foreclose any mortgage upon real property in this state, if the whole or any part of the homestead of the mortgagor, or of anyone claiming under him, as such homestead is defined by the laws of this state, shall be included in the real estate described in such mortgage, the person claiming such homestead may, at any time prior to the foreclosure sale, serve or cause to be served upon the sheriff making such sale a notice of such claim which shall designate and describe with reasonable certainty the real estate so claimed and selected as such homestead, ... Upon the service and filing of such notice, it shall be the duty of the sheriff, at the time of the sale, to first offer for sale and sell that part of the mortgaged real estate, or so much thereof as is necessary, which is not included in such selected homestead, and thereupon, if the proper purposes of the foreclosure require, he shall offer for sale and shall sell separately that part of the mortgage real estate included in the selected homestead; ....

The parties agree that the value of the nonexempt 230 acres is $239,500.00. Federal Land Bank's claim, which was $201,282.11 on the day the petition was filed, is now $250,398.59 including post-petition accrual of interest. There is no dispute that Federal Land Bank's claim has surpassed the fair market value of the 230 nonexempt acres. In light of the stipulated values and

---

1. The doctrine of marshaling as it could be applied in Defendant's favor, can be described as follows: where one creditor has alternative sources to which he may resort to satisfy his debt, and another creditor has a junior interest in only one of the same sources to which he may resort, the latter creditor may compel the former creditor to satisfy his debt first from the sources in which the latter creditor has no lien.

2. In an appropriate case, the doctrine of subrogation might allow a junior lienor with respect to property foreclosed upon, to have his lien substituted in place of a lien in favor of the senior foreclosing lienor on property that the senior lienor elects not to foreclose upon to satisfy the senior lienor's debt. Defendant also

asks the Court to recognize the doctrine of "inverse order of alienation." This doctrine is normally applied where the owner of a parcel subject to a lien, subsequently conveys out portions of the parcel. The doctrine, when applied, requires that the prior encumbrance on all the property be satisfied first out of the land retained by the owner and then out of land subsequently transferred.

3. Defendant also initially raised the issue of Plaintiffs' standing to bring this action since the property involved was neither claimed exempt nor abandoned by the estate. The trustee has subsequently abandoned the estate's interest in the property, however, and consequently, the issue is moot.

the amount owing to Federal Land Bank, it must be assumed that the Federal Land Bank will foreclose on all 350 acres, causing sale of the 230 nonexempt acres first; and then so much of the remaining exempt property as can be reasonably separated and sold to satisfy the total indebtedness. Accordingly, in foreclosure of all the non-exempt property, its value would be completely consumed by Federal Land Bank as a result of the sale. Defendant's mortgage interest, then, has no value directly related to the 110 acres covered by its second mortgage.

Equitable doctrines, such as subrogation, if applicable at all, should be enforced only when equity requires.[4] The Court will not recognize these doctrines to the detriment of a party who has a superior equity.[5] When the Debtors granted a mortgage to the Defendant on property subject to a much larger prior mortgage, they deliberately chose not to add an additional encumbrance to their homestead property. Presumably they did this to protect their exemption interests in the property. If the Defendant did not realize this, it should have.

Furthermore, Defendant must have been aware of MINN.STAT. § 582.04 and the protection it codified for homestead property. When Defendant took its mortgage, presumably the nonexempt property had a value sufficient to protect it. Unfortunately, land values have in recent times decreased precipitously. Defendant, who chose not to require a mortgage on the Debtors' homestead, must bear the loss. This Court will not, under equitable principles or otherwise, recast the bargain of the parties to relieve Defendant of the unfortunate consequences of intervening economic forces, thereby shifting those consequences to the Debtors.

**4.** Both parties assumed, but neither demonstrated, that equitable doctrines still retain vitality in the context of a foreclosure sale in a situation involving both homestead and nonhomestead real estate in light of MINN.STAT. § 582.04.

**5.** Since the value of all 230 nonexempt acres would be completely consumed in a Federal Land Bank foreclosure, the equitable principles

ACCORDINGLY, IT IS ORDERED:

1. Plaintiffs' motion for summary judgment is granted.

2. Defendant's motion for summary judgment is denied.

3. The mortgage of the Farmers Elevator Co-op of Sleepy Eye on the interests of Donald, Melvin and Marie Cook in the 110 acres legally described in the Debtors' bankruptcy petitions is hereby declared null and void.

Let Judgment Be Entered Accordingly.

that Defendant urges be recognized, would be effective in this case only against the Debtors' homestead property. This Court will not, as Defendant suggests, recognize its right to allocate the two mortgages across all of the acreage, since that would defeat the underlying purpose of MINN.STAT. § 582.04.