# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6087 MN

_____

| | | |
|---|---|---|
| In re: Donald A. Anderson, | * | |
| as surety for Andair Farms, | * | |
| also known as Anderson Farms; | * | |
| Joyce D. Anderson, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| JaKS Farm Custom Forage | * | Appeal from the United States |
| Harvesting, L.L.C., | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Creditor-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Donald A. Anderson and | * | |
| Joyce D. Anderson, | * | |
| | * | |
| Debtor-Appellees. | * | |

_____

Submitted: March 2, 2004
Filed: March 16, 2004

_____

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

_____

JaKS Farm Custom Forage Harvesting, L.L.C. (JaKS) appeals from an order of the bankruptcy court confirming debtors Donald and Joyce Anderson's Chapter 12 plan, and from an order of the court denying its motion for a new trial. We reverse the order confirming the Chapter 12 plan and remand for further proceedings.

FACTUAL BACKGROUND

The Andersons owned 220 acres of farm real estate in Carlton County, Minnesota. They also owned 47 ½ percent of Andair Farms Partnership (Andair). Andair owned 478 acres of farm real estate in Carlton County.

On September 16, 2002, JaKS obtained a judgment against Donald Anderson and Andair in the amount of $23,847.[1] The judgment was duly docketed in Carlton County.

On June 30, 2003, the Andersons filed a Chapter 12 bankruptcy petition. Andair had previously filed a Chapter 12 bankruptcy petition, and the court had confirmed Andair's Chapter 12 plan without objection.

In their bankruptcy schedules the Andersons and Andair combined their assets and liabilities save for their farm real estate, personal property, and the Andersons' unpaid income taxes. The two cases, however, were never consolidated. Andair scheduled real estate with a value of $254,500 and personal property with a value of $405,596.33. Andair also scheduled secured debt in the amount of $868,843.98, including AgStar Financial Services' (AgStar) claim against the real estate in the amount of $257,100.93, priority debt in the amount of $32,358.98 and unsecured debt in the amount of $345,876.89. AgStar is a secured creditor of both the Andersons and Andair. The Andersons represented that both Andair and the

---

[1]Appellant's Appendix at A-114.

Andersons executed a series of notes with AgStar, all of which are cross-collateralized. No documents were admitted into evidence, however. Andair scheduled secured claimants other than AgStar with claims totaling $129,957.27.

The Andersons scheduled real estate with a value of $168,800 and personal property with a value of $61,103.95. Like Andair, they claim secured debt in the amount of $868,843.98, including AgStar's claim against the real estate in the amount of $47,170,[2] and unsecured debt of $345,876.89. Their priority debt includes Andair's claim for $32,358.98, plus an additional claim for personal income taxes due for a total claim of $46,272.68. Like Andair, the Andersons scheduled secured claimants other than AgStar, with claims totaling $129,957.27.

The scheduled combined value of the Andersons' and Andair's real and personal property is, therefore, $890,000.28. AgStar claims liens, allegedly cross-collateralized, in the amount of $745,000 on the real and some of the personal property. Other secured claimants hold claims totaling $129,957.27. The Andersons' schedules list no other creditors with claims against the real estate.

AgStar filed a proof of claim in the Andair case for real estate debt totaling $304,270.93. It did not, however, file a proof of claim in the Andersons' case prior to the confirmation hearing. While the numbers do not totally correspond, this is in keeping with the Andersons' schedules, which apportioned a lien to their 220 acres in the amount of $47,170 and a lien to Andair's 478 acres in the amount of $257,100.93.

---

[2]The Andersons' attorney indicated that his computer software apportioned only part of AgStar's real estate debt to the Andersons, even though, if the debt is cross-collateralized, the entire real estate debt would be secured by the Andersons' real estate.

During the pendency of the Chapter 12 case, but prior to confirmation, the Andersons moved to sell 40 acres of their homestead property for $80,000. They proposed applying the proceeds of that sale to AgStar's chattel loans, and JaKS objected. On October 14, 2003, the court overruled the objection and entered an order authorizing the sale. The order provided, however, that the proceeds of the sale were to be applied first to costs of sale, then to "AgStar loan no. 759622700 ('Long Term Note') dated August 15, 2003, refinancing and reamortizing loan nos. 6006278500 and 753235600, secured by mortgages encumbering the above-described real estate and filed with the Carlton County Recorder on February 15, 1995, as Document No. 301769 and on June 2, 2000, as Document No. 341335."[3]

On September 25, 2003, the court held a confirmation hearing. At the hearing the court found that JaKS failed to prove its claim was secured; therefore, on October 2, 2003, the court confirmed the Andersons' Chapter 12 plan. JaKS filed a timely motion for a new trial, which was denied on October 30, 2003, following another hearing.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[4] We review the legal conclusions of the bankruptcy court

---

[3]Appellant's Appendix, Doc. # 12 (Amended Order Authorizing Sale of Real Estate).

[4]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

*de novo.*[5] Whether the bankruptcy court considered all of the elements of 11 U.S.C. § 1225 of the Bankruptcy Code (the Code) is subject to *de novo* review. Whether the court erred when it found JaKS failed to prove it held a secured claim is a factual finding.

## DISCUSSION

We begin with the observation that neither party requested a valuation hearing. Moreover, the Andersons did not object to the claim of JaKS, nor did they file a proceeding to avoid JaKS' lien.[6] A proof of claim is deemed allowed unless a party in interest objects.[7] Thus, because the parties did not follow the procedure outlined in the Code and the Federal Rules of Bankruptcy Procedure, the court was required to deal with these matters at the confirmation hearing.

Section 1225 of the Code specifically sets forth the requirements for confirmation of a Chapter 12 plan. Section 1225(a)(5) provides for the treatment to be accorded a secured claim:

> (a)  Except as provided in subsection (b), the court shall confirm a plan if—
>
> . . .
>
> (5)  with respect to each allowed secured claim provided for by the plan—

---

[5]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[6]Fed. R. Bankr. P. 7001(2).

[7]11 U.S.C. § 502(a).

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.[8]

The court found that JaKS failed to prove its claim was secured. We conclude that such a finding is clearly erroneous. The Andersons listed JaKS as an unsecured creditor, but Mr. Anderson freely admitted at the confirmation hearing that JaKS had obtained a judgment in Carlton County, Minnesota. The Andersons never properly contested the validity of JaKS' lien. Instead, the Andersons filed a Chapter 12 plan that classified any judgment as a Class 12 unsecured claim, "liens of all which are avoided under 11 U.S.C. § 506."[9] JaKS had already filed a proof of claim and

---

[8]11 U.S.C. § 1225(a)(5).

[9]Appellant's Appendix, Doc. # 6 at page A-61 (Chapter 12 Plan dated August 22, 2003).

designated its claim as secured. The Andersons never objected to that claim, therefore, the claim is deemed allowed as filed. Moreover, in Minnesota a judgment becomes a lien and attaches to non-homestead real estate at the time a judgment is docketed:

> **Subdivision 1. Entry and docketing; survival of judgment**. Except as provided in section 548.091, every judgment requiring the payment of money shall be entered by the court administrator when ordered by the court and will be docketed by the court administrator upon the filing of an affidavit as provided in subdivision 2. . . . From the time of docketing the judgment is a lien, in the amount unpaid, upon all real property in the county then or thereafter owned by the judgment debtor, but it is not a lien upon registered land unless it is also filed pursuant to sections 508.63 and 508A.63.[10]

Not only does a judgment become a lien upon docketing, but such "docketed judgment is placed upon the same footing as a recorded conveyance." [11] Under the facts established above, JaKS' claim is allowed as secured, and the court erred in shifting the burden to JaKS to so prove.

Over the objection of a secured creditor, the Andersons must prove that their proposed Chapter 12 plan satisfies section 1225(a)(5) of the Code.[12] In *United States v. Krause (In re Krause)*, we concluded that the Chapter 12 debtor has the burden of proving that his Chapter 12 plan meets all of the requirements of section 1225.[13] If a creditor has a secured claim then the plan must provide that the creditor retains its

---

[10]Minn. Stat. Ann. § 548.09.

[11]*Lowe v. Reierson*, 201 Minn. 280, 285, 276 N.W. 224, 226 (1937).

[12]*United States v. Krause (In re Krause)*, 261 B.R. 218, 222 ( B.A.P. 8th Cir. 2001).

[13]*Id.*

lien, and that it is entitled to the present value of its secured claim.[14] The Andersons' Chapter 12 plan did not classify JaKS' claim as a secured claim. It provided no payment for JaKS' claim, and it arbitrarily provided that all judgment liens are avoided.

The Andersons cite no provision of the Code that permits a debtor to use the Chapter 12 confirmation process to avoid judgment liens. They rely on *Harmon v. U.S. Through Farmers Home Administration (In re Harmon)*,[15] but such reliance is misplaced. In *Harmon*, the debtors proposed a plan that bifurcated a second mortgage into secured and unsecured portions. The parties agreed on the value of the real estate, and on the amount of the mortgagee's secured and unsecured claims. The debtors completed their plan payments and received a discharge. Thereafter, upon sale of the real estate, Ms. Harmon paid the remainder of the secured claim. The creditor then attempted to attach the proceeds of the sale for the remaining unsecured claim. The Eighth Circuit held that the unsecured portion remaining after debtors completed their Chapter 12 plan had been discharged.[16] The Andersons attempt to use *Harmon* for the premise that a proposed Chapter 12 plan can be used as the vehicle for determining that a secured claim, unsupported by collateral value, should be treated as unsecured. But in *Harmon* that was never an issue since the parties had, prior to the confirmation hearing, stipulated, without evidence as to value, that part of the secured claim should be treated as unsecured.

Indeed, in *Harmon* the Eighth Circuit noted that "... if the bankruptcy court never considers the lien the plan cannot extinguish it."[17] In doing so, the court cited

---

[14]11 U.S.C. § 1225(a)(6).

[15]101 F.3d 574 (8th Cir. 1996).

[16]*Id.* at 583.

[17]*Id.* at 581.

to a Fourth Circuit case *Cen - Pen Corp. v. Hanson,*[18] in which a Chapter 13 debtor had obtained confirmation of a plan which treated a lienholder as an unsecured creditor. The lienholder had neither objected to confirmation, nor filed a proof of claim. The Fourth Circuit held that confirmation of the plan did not establish that the creditor's lien was avoided. "For a debtor to extinguish or modify a lien during the bankruptcy process, some affirmative step must be taken toward that end. Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation."[19] As the *Hanson* Court pointed out, Bankruptcy Rule 7001(2) expressly requires initiation of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property."[20] Where the lienholder has filed a proof of claim, as JaKS did here, debtors may bring the issue to a head by filing an objection to such claim.[21] In any event, it is the debtor which must take an affirmative step to avoid the lien, and the debtor which bears the burden of proof as to the value of the collateral.

The Andersons also rely on *Cook v. Farmers Elevator Coop of Sleepy Eye (In re Cook),*[22] for the premise that a secured creditor must first apportion payment on a mortgage to the nonexempt property that collateralizes the loan. AgStar's mortgage includes both homestead property, as well as the nonhomestead property to which the JaKS judicial lien attached. The Andersons claim that, if AgStar were forced to look

---

[18]58 F.3d 89 (4th Cir. 1995)

[19]*Id.* at 92.

[20]Fed. R. Bankr. P. 7001(2)

[21]Fed. R. Bankr. P. 3007, which provides that "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."

[22]67 B.R. 240 (Bankr. D. Minn. 1986).

first to the nonhomestead property for satisfaction of its mortgage, there would be no equity in such property to support JaKS' junior judicial lien.

In *Cook*, the court found that under Minnesota law a debtor can "force a foreclosing creditor to first sell all nonexempt property covered by its mortgage before resorting to exempt property."[23] However, as the court stated in *Bowers v. Norton*,[24] "[t]he right to marshal assets is a matter of equity, and is governed by equitable principles. The doctrine will be applied only when it can be done with justice to the creditor and his debtor, and without prejudice to third persons."[25] JaKS is a third party with a valid judicial lien that attached to any non-exempt real estate at the time the judgment was docketed. Earlier in this case the Andersons voluntarily decided to sell 40 acres of homestead property for $80,000. The court at that time determined that the Andersons must apply the proceeds of that sale to the note secured by such real estate, including the homestead;[26] thus, debtors were denied the option of applying the proceeds so as to defeat the junior lien. That holding was consistent with Minnesota law as expressed in *Bowers*.

In sum, if debtors wish to avoid a lien as being without value they must take affirmative steps to bring that issue before the Court, and must prove that there is no equity to support such lien. In so doing, debtors must allocate debt and collateral values to, if possible, preserve junior liens. With these principles in mind, we turn to the evidence offered by debtors here.

---

[23]*Id.* at 242 *citing* Mn. Stat. Ann. § 582.04.

[24]175 Minn. 541, 222 N.W. 71 (1928).

[25]*Id.*, 175 Minn. at 544, 222 N.W. at 72.

[26]Appellant's Appendix, Doc. # 12 at page A-97 (Amended Order Authorizing Sale of Real Estate dated October 14, 2003).

The only evidence of valuation before the court was provided by the Andersons through their schedules and their plan's liquidation analysis. Those values indicate that the combined value of the Andersons' and Andair's real estate is $423,300. AgStar filed a proof of claim in the amount of $304,270.93 in Andair's bankruptcy, which claim was secured by said real estate, thus indicating equity sufficient to support JaKS's judgment lien.

The Andersons value their personal property at $61,103.95 and Andair's personal property at $405,596.33, for a total value of $466,700.28. AgStar also filed a proof of claim in Andair's bankruptcy secured by real estate, machinery, livestock, harvested and processed crops, manure handling equipment, milking equipment, contract rights, chattel paper, documents, accounts, and general intangibles in the amount of $430,008.50. According to the Chapter 12 plan, other secured claimants hold claims in the amount of $129,957.27, for total secured claims for personal property in the amount of $559,965.7. Based upon the values reflected in the Andersons' schedules and plan, the Andersons and Andair claim total assets in the amount of $890,000.28. Secured claims appear to be in the amount of $864,236.70. At a minimum, if cross-collateralization is proven, using only the Andersons' schedules for values, the Andersons have nonexempt equity in the amount of $25,763.58. Such equity, if it were found to exist, would be sufficient to pay the JaKS judgment lien.[27] Thus, the court erred as a matter of law when it confirmed a Chapter 12 plan that failed to provide for the claim of a secured creditor, as required by section 1225(a)(5) of the Code.

We, therefore, reverse the order confirming the Chapter 12 plan. We remand the case for a determination by the court as to the value of the Andersons' real and

---

[27]Though the parties do not raise the issue in their briefs, JaKS has a judgment only against Donald Anderson, and the Andersons' schedules indicate they own the real estate jointly.

11

personal property, the effect of any cross-collateralization as to AgStar's liens, and the extent and validity of JaKS' lien.

_____